# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| ROBERT M. MONGEAU, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. CIV-12-127-SPS |
| | ) |
| CAROLYN W. COLVIN, | ) |
| Acting Commissioner of the Social | ) |
| Security Administration, | ) |
| | ) |
| Defendant. | ) |

## OPINION AND ORDER

The claimant Robert M. Mongeau requests judicial review of a denial of benefits by the Commissioner of the Social Security Administration pursuant to 42 U.S.C. § 405(g). He appeals the Commissioner's decision and asserts that the Administrative Law Judge ("ALJ") erred in determining he was not disabled. For the reasons discussed below, the Commissioner's decision is hereby REVERSED and the case is REMANDED to the ALJ for further proceedings.

### Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment[.]" 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work

which exists in the national economy[.]" *Id.* § 423 (d)(2)(A). Social security regulations implement a five-step sequential process to evaluate a disability claim. *See* 20 C.F.R. §§ 404.1520, 416.920.[1]

Section 405(g) limits the scope of judicial review of the Commissioner's decision to two inquiries: whether the decision was supported by substantial evidence and whether correct legal standards were applied. *See Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th Cir. 1997). Substantial evidence is "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971), *quoting Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938); *see also Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996). The Court may not reweigh the evidence or substitute its discretion for the Commissioner's. *See Casias v. Sec'y of Health & Human Svcs.*, 933 F.2d 799, 800 (10th Cir. 1991). But the Court must review the record as a whole, and "[t]he substantiality of evidence must take into account whatever in the record fairly detracts from its weight."

---

[1] Step one requires the claimant to establish that he is not engaged in substantial gainful activity. Step two requires the claimant to establish that he has a medically severe impairment (or combination of impairments) that significantly limits his ability to do basic work activities. If the claimant *is* engaged in substantial gainful activity, or his impairment *is not* medically severe, disability benefits are denied. If he *does* have a medically severe impairment, it is measured at step three against the listed impairments in 20 C.F.R. Part 404, Subpt. P, App. 1. If the claimant has a listed (or "medically equivalent") impairment, he is regarded as disabled and awarded benefits without further inquiry. Otherwise, the evaluation proceeds to step four, where the claimant must show that he lacks the residual functional capacity (RFC) to return to his past relevant work. At step five, the burden shifts to the Commissioner to show there is significant work in the national economy that the claimant *can* perform, given his age, education, work experience, and RFC. Disability benefits are denied if the claimant can return to any of his past relevant work or if his RFC does not preclude alternative work. *See generally Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988).

*Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951); *see also Casias*, 933 F.2d at 800-01.

**Claimant's Background**

The claimant was born July 17, 1959, and was fifty-four years old at the time of the most recent administrative hearing (Tr. 57). He completed the twelfth grade, and has no past relevant work (Tr. 21, 252). The claimant alleges he has been unable to work since September 22, 2008, due to a cracked pelvis, broken discs in his back, and a shattered wrist (Tr. 247-248).

**Procedural History**

The claimant applied for supplemental security income benefits under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-85, on October 30, 2008. His application was denied. ALJ Edward Thompson held an administrative hearing and determined that the claimant was not disabled in a written opinion dated January 4, 2011 (Tr. 126). On April 21, 2011, the claimant filed a subsequent application for supplemental security income benefits, and by Notice of Award was determined to be disabled as of April 21, 2011. As to the original case, the Appeals Council denied review of this decision and the claimant appealed to this Court in Case No. CIV-12-127-SPS, but this Court remanded the case on June 12, 2012 at the request of the Commissioner and pursuant to Sentence Six of 42 U.S.C, § 405(g) because large portions of the administrative hearing were inaudible. *See* Docket No. 15. On November 26, 2012, the Appeals Council vacated ALJ Thompson's January 2011 decision and remanded the case to the ALJ following this Court's Sentence Six remand. On remand, the Appeals Council limited the ALJ to the

period prior to April 21, 2011, unless further development of the record resulted in good cause to reopen (Tr. 346-347). The Appeals Council directed the ALJ to: (i) evaluate the updated records in connection with the claimant's subsequent application to consider whether they were indicative of a *greater* level of impairment during the relevant period at issue, (ii) obtain evidence from a medical expert to clarify the nature and severity of the claimant's impairments and whether an *earlier onset date* is warranted, and (iii) reassess the claimant's RFC and if necessary, obtain further vocational expert testimony (Tr. 347). On remand the ALJ determined that there was good cause to reopen the subsequent favorable determination, and determined that the claimant was not disabled prior to March 18, 2014 in a written opinion dated March 24, 2014, but that he considered the claimant to have changed to a person of advanced age on March 18, 2014, and was therefore disabled under Medical-Vocational Rule 202.04, a.k.a. "the Grids" (Tr. 11-23). The Commissioner then notified this Court that the case was administratively complete and that ALJ Thompson's May 2014 written opinion is the Commissioner's final decision for purposes of this appeal. *See* 20 C.F.R. § 416.1481. The Court then granted the Commissioner's Unopposed Motion to Vacate Order Remanding Case for Further Proceedings. *See* Docket Nos. 21-23.

**Decision of the Administrative Law Judge**

The ALJ made his decision at step five of the sequential evaluation. He found that the claimant had the residual functional capacity (RFC) to perform light work as defined in 20 C.F.R. § 416.967(b), *i. e.*, he could lift/carry twenty pounds occasionally and ten pounds frequently; sit without interruption at one time for one hour; stand without

interruption at one time for one hour; walk without interruption at one time for thirty minutes; sit for a total of six hours in an eight-hour workday; stand a total of three hours in an eight-hour workday; walk for three hours in an eight-hour workday; and required a sit/stand option. The ALJ specifically stated that the claimant did not need a cane to ambulate; was right hand dominant and could use his right upper extremity and right hand for frequent reaching, handling, fingering, feeling, and push/pull; could use his left upper extremity and left hand for frequent reaching, handling, fingering, and feeling, but could only occasionally push/pull; could frequently use his feet to operate foot controls; could frequently balance; could occasionally climb ramps/stairs, stoop, kneel, and crouch; could never climb ladders/scaffolds or crawl. The ALJ concluded that the claimant did not have a hearing or vision impairment; could never tolerate exposure to unprotected heights or moving mechanical parts; and could only occasionally tolerate exposure to operating a motor vehicle; but could frequently tolerate cold, extreme heat, and vibrations; and could tolerate exposure to loud (heavy traffic) noise. He could perform activities like shopping, travel without a companion for assistance, and ambulate without using a wheelchair, walker, or 2 canes or 2 crutches. Furthermore, he could walk a block at a reasonable pace on rough or uneven surfaces, could use standard public transportation, could climb a few steps at a reasonable pace with the use of a single hand rail, could prepare a simple meal and feed himself, could care for his personal hygiene, and could sort, handle, or use paper/files (Tr. 18). The ALJ then concluded that although the claimant did not have any past relevant work to return to, he was nevertheless not disabled prior to March 18, 2014, because there was work he could perform in the

national economy, *i. e.*, storage facility rental clerk, routing clerk, and hand inspector (Tr. 22-23).

**Review**

The claimant's sole argument on appeal is the ALJ failed to establish good cause to reopen the favorable determination that the claimant was disabled beginning April 21, 2011. Although the Court finds that the ALJ did have good cause to reopen the favorable determination, the Court must nevertheless reverse the case and remand it for further proceedings because the ALJ wholly failed to properly assess the evidence in the record in determining the claimant's RFC.

The claimant fell 28 feet off a ladder on September 22, 2008, and sustained injuries to his back, pelvis, and left wrist (Tr. 258). He subsequently underwent lumbar spine surgery for his left distal radius fracture in the form of open reduction and internal fixation with bone grafting (Tr. 291). Follow-up notes from December 2, 2008, reflect that the claimant was ambulating with a walker, had decreased strength in the lower extremities globally, and favored the right side due to tenderness on the left, but had good healing along with good alignment of the hardware (Tr. 298).

On March 7, 2009, Traci Carney, D.O., conducted a physical examination of the claimant (Tr. 304). Upon examination, the claimant had decreased grip strength of 2/5 on the left side, which was weak and not firm; great toe strength decreased bilaterally secondary to pain; weak heel/toe walking secondary to pain; and a limp to the left, along with unsteady gait and walking with one crutch and leaning to the left (Tr. 306). Later in her assessment, she stated that an ambulatory device was not used, and that the claimant

ambulated around 50 feet with normal speed, good balance, and good heel toe to gait pattern in the office (Tr. 307). Additionally, the lumbosacral spine had tenderness to palpation and decreased range of motion with associated paraspinal muscle spasms, but a normal seated straight leg raising test bilaterally (Tr. 307). She assessed the claimant with low back pain due to a fracture of the parsaticulars and L5 and S1, resulting in lumbar fusion L5 S1 with hardware placement; pelvic fracture; left wrist fracture over subsequent plate and screw placement secondary to accident in 2008 and traumatic incident; and tobacco abuse (Tr. 307).

A state reviewing physician determined on March 19, 2009, that the claimant could perform medium work, but was limited to occasional for all postural limitations and was limited in handling due to decreased grip strength (Tr. 313-315).

Evidence from the claimant's subsequent application included a February 25, 2012 examination conducted by William Cooper, D.O. (Tr. 549). Dr. Cooper noted that the claimant had pain with range of motion testing of the left hip, but that he had full range of motion; that he had no edema; and that grip strength was 5/5 bilaterally (Tr. 550). Further, Dr. Cooper noted that great toe strength was equal bilaterally, that leg lengths were equal bilaterally, and that the claimant had a full range of motion of the left wrist, but that it was accompanied by pain (Tr. 551). As to his back, the claimant had pain with range of motion testing of the lumbar spine and diminished range of motion of the lumbar spine, as well as mild flattening of the lumbar lordosis, but that he had no tenderness to palpation of the low back bilaterally and that the cervical spine was non-tender with full range of motion (Tr. 551). In assessing the claimant's gait, Dr. Cooper stated that the

claimant presented with a crutch under the left arm and stated that he was unable to ambulate without it because of the pain in his low back and left hip. Dr. Cooper stated that the claimant was able to heel stand and toe stand without difficulty, but was unable to ambulate in that fashion, and that his strength seemed to be adequate (Tr. 551). He assessed the claimant with history of pelvic fracture, lumbar spinal fracture, and left wrist fracture, along with lumbar disc disease, chronic low back pain, and chronic left hip and left wrist pain (Tr. 551).

On April 2, 2012, a state reviewing physician found that the claimant could perform sedentary work, *i. e.*, he could lift/carry ten pounds occasionally and five to nine pounds frequently, could perform any combination of standing and/or walking a maximum of two hours in an eight-hour workday, and could sit four to six hours in an eight-hour workday (Tr. 558). In support of this assessment, the reviewing physician cited Dr. Cooper's assessment, including the claimant's pain with range of motion, limited range of motion, use of crutch, and inability to ambulate without the crutch (Tr. 564). The conclusion was that, in light of the claimant's pain and credible allegations, great weight was given to the medical evidence which supported a sedentary RFC (Tr. 564).

At the June 20, 2013 administrative hearing, the ALJ called Dr. Ollie Raulston as a medical expert on remand. Dr. Raulston gave his opinion at the hearing, but when it was determined that he had not been provided a copy of the records from the claimant's subsequent application prior to the hearing, the hearing was adjourned. Upon receiving the updated information, Dr. Raulston then completed a Medical Source Statement

(MSS) of the claimant's ability to perform work, and also answered a series of interrogatories related to the claimant's physical impairments. In the MSS, Dr. Raulston opined that the claimant could lift/carry up to twenty pounds occasionally and ten pounds frequently, sit up to six hours a day for one hour at a time, stand up to three hours a day for one hour at a time, and walk up to three hours a day for thirty minutes at a time (Tr. 570-571). He checked a box indicating that the claimant did not require a cane to ambulate, and indicated that the claimant could use his hands frequently for all manipulative limitations, except that the claimant could only occasionally push/pull with his left hand (Tr. 572). He indicated that the claimant could frequently operate foot controls with his right foot, but only occasionally with the left foot (Tr. 572). Further, the claimant could never climb ladders or scaffolds, or crawl; occasionally climb stairs and ramps, stoop, kneel, and crouch; and frequently balance (Tr. 573). As to environmental limitations, the claimant could never tolerate exposure to unprotected heights or moving mechanical parts; occasionally operate a motor vehicle; and frequently tolerate humidity and wetness, dust, odors, fumes, and pulmonary irritants, extreme cold, extreme heat, vibrations, and loud noise (Tr. 574). Finally he checked boxes indicating that the claimant could shop; travel without a companion for assistance; ambulate without using a wheelchair, walker, or 2 canes or 2 crutches; walk a block at a reasonable pace on rough or uneven surfaces; use standard public transportation; climb a few steps at a reasonable pace with the use of a single hand rail; prepare a simple meal and feed himself; care for his personal hygiene; and sort, handle, or use paper/files (Tr. 575). With the exception of statements regarding the claimant's ability to use foot controls, the ALJ adopted this

assessment wholesale (Tr. 18). Dr. Raulston did not list any medical findings supporting this assessment, though instructed to do so (Tr. 575). He stated that his opinion was to date back to September 22, 2008 through the present (Tr. 575).

In response to the interrogatories, Dr. Raulston referred to the CT scans done following the claimant's fall in September 2008 as the impairments established by the evidence (Tr. 272-286, 576). He then opined that the claimant did not meet a listing, citing to Dr. Carney and Dr. Cooper's exams, specifically pointing out that the claimant had decreased left grip strength with Dr. Carney but not with Dr. Cooper; that the claimant had low back pain with decreased range of motion, but no atrophy; and that the claimant used a crutch but could heel/toe stand (Tr. 577). He further pointed out that Dr. Carney observed a normal gait without aids at her exam, but did not mention the claimant's pain with heel/toe walking, limp to the left, and use of the crutch with Dr. Carney, nor did he mention that the claimant did not ambulate without a crutch with Dr. Cooper (Tr. 577).

In his written opinion, the ALJ determined that the claimant's severe impairments were: fracture left pubic rami; fracture distal left radius; fracture left sacral ala; 25% compression fracture L2 and L5; traumatic spondylolisthesis L5; degenerative disc disease and degenerative joint disease L5-S1 (Tr. 15). At step two, he recited his own summary of the medical evidence from his earlier opinion, and further summarized Dr. Cooper's assessment, then determined that the claimant's impairments did not meet a listing at step three. At step four, the ALJ summarized the claimant's hearing testimony and found him not credible. He then noted that the claimant had not documented any

attempts to seek treatment at free or subsidized clinics, and stated that the only new medical evidence was Dr. Cooper's 2012 consultative exam (Tr. 19). He stated that the claimant's presentation was inconsistent in front of Dr. Carney, because he was noted to have an unsteady gait that leaned to the left, then used no assistive device and walked with normal speed (Tr. 19-20). He gave Dr. Raulston's opinion great weight because he reviewed the entire record and his opinion was accompanied by "a detailed narrative of the evidence relied upon and is consistent with evidence" (Tr. 20). The ALJ then adopted Dr. Raulston's assessment, except for the left foot controls which were not explained by the ALJ. He gave "some weight" to the state reviewing opinion that the claimant could perform medium weight, but gave "some credence to the claimant's [unspecified] subjective complaints" (Tr. 20). He then gave "little weight" to the state reviewing opinion that the claimant was limited to sedentary work, because "it appears to take at face value the claimant's presentation with use of a crutch and limits the claimant's [RFC] to sedentary exertion" (Tr. 20). He then reiterated his belief in inconsistencies regarding the claimant's gait and that the claimant could heel/toe stand. He once again restated his faith in Dr. Raulston's assessment, and determined that the claimant was not disabled prior to March 18, 2014 (Tr. 21-23).

The claimant argues that the ALJ lacked good cause to reopen the subsequent adjudication of benefits. "A determination, revised determination, decision, or revised decision may be reopened – (a) within 12 months of the date of the notice of the initial determination, for any reason; (b) within two years of the date of the notice of the initial determination if we find good cause, as defined in § 416.1489, to reopen the case[.]"

20 C.F.R. § 416.1488. Both the Appeals Council and the ALJ noted that the claimant's award under her subsequent application had been sent back within a year, but the Appeals Council specifically stated that it should not be reopened without good cause (Tr. 12-13, 347). Good cause can be determined by, *inter alia*, new and material evidence, and Dr. Raulston's opinions qualify under this standard. 20 C.F.R. § 416.1489.

Evidence is new if it "is not duplicative or cumulative." *Threet v. Barnhart*, 353 F.3d 1185, 1191 (10th Cir. 2003), *quoting Wilkins v. Sec'y, Dep't of Health & Human Svcs.*, 953 F.2d 93, 96 (4th Cir. 1991). Dr. Raulston's MSS and Interrogatories were never presented to the ALJ prior to his original decision and there thus neither duplicative nor cumulative. Second, evidence is material "if there is a reasonable possibility that [it] would have changed the outcome." *Threet*, 353 F.3d at 1191, *quoting Wilkins*, 953 F.2d at 96. The evidence must "reasonably [call] into question the disposition of the case." *Id.* *See also Lawson v. Chater*, 1996 WL 195124, at *2 (10th Cir. April 23, 1996). Noting that there was not much evidence regarding the claimant's impairments after 2009 but that he continued to assert the severity of his impairments, the evidence was material because it provided an opinion as to the claimant's impairments beginning from his fall in September of 2008. This means that the evidence was also chronologically relevant and pertained to the time "period on or before the date of the ALJ's Decision." *Kesner v. Barnhart*, 470 F. Supp. 2d 1315, 1320 (D. Utah 2006), *citing* 20 C.F.R. § 404.970(b). Dr. Raulston's opinion was thus new and material evidence, establishing good cause to reopen a determination or decision. 20 C.F.R. § 416.1489.

Although Dr. Raulston's opinion qualified as good cause for reopening the determination, the ALJ nevertheless was required to assess *all* the evidence in the record according to the appropriate standards. This he failed to do. "An ALJ must evaluate every medical opinion in the record, although the weight given each opinion will vary according to the relationship between the disability claimant and the medical professional. . . . An ALJ must also consider a series of specific factors in determining what weight to give any medical opinion." *Hamlin v. Barnhart*, 365 F.3d 1208, 1215 (10th Cir. 2004) [internal citation omitted], *citing Goatcher v. United States Department of Health & Human Services*, 52 F.3d 288, 290 (10th Cir. 1995). The pertinent factors include the following: (i) the length of the treatment relationship and the frequency of examination; (ii) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (iii) the degree to which the physician's opinion is supported by relevant evidence; (iv) consistency between the opinion and the record as a whole; (v) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (vi) other factors brought to the ALJ's attention which tend to support or contradict the opinion. *See Watkins v. Barnhart*, 350 F.3d 1297, 1300-1301 (10th Cir. 2003) [quotation marks omitted], *citing Drapeau v. Massanari*, 255 F.3d 1211, 1213 (10th Cir. 2001).

The ALJ made no reference whatever to these factors in connection with the evaluations these records and assessments, and it is therefore unclear whether he considered any of them. *See, e. g., Anderson v. Astrue*, 319 Fed. Appx. 712, 718 (10th Cir. 2009) ("Although the ALJ's decision need not include an *explicit discussion* of each

factor, the record must reflect that the ALJ *considered* every factor in the weight calculation.") [emphasis in original]. The ALJ instead opted to simply reject those records in favor of a reviewing physician who neither examined nor treated the claimant, and who also ignored and misstated evidence from *both* of the claimant's consultative examiners, Dr. Carney *and* Dr. Cooper. Two months prior to the Dr. Carney's exam, a follow-up note by the claimant's surgeon states on January 15, 2009 that the claimant continued to ambulate using a platform walker and needed to wean out of using his brace – the ALJ ignored that information and instead simply recited that the claimant "was able to ambulate on his own" (Tr. 20, 303). Dr. Carney twice pointed out that the claimant's great toe strength was decreased bilaterally secondary to pain, that heel/toe walking was weak secondary to pain, that he limped, and that his gait was unsteady with the use of one crutch (Tr. 306). There is then a statement that the claimant did not use an ambulatory device and ambulated 50 feet (Tr. 307). The ALJ attributes this to an inconsistent presentation, but Dr. Carney does not discuss or address an "inconsistent presentation" (Tr. 19-21). Dr. Cooper examined the claimant in 2012 and again noted that the claimant used one crutch, and although he could heel stand and toe stand, he was unable to ambulate in that fashion; the ALJ did not address how the claimant could walk without an assistive device in light of his demonstrated inability to heel/toe walk. The ALJ cannot misconstrue and selectively cite evidence in order to deny the claimant benefits. *See, e. g., Clifton*, 79 F.3d at 1010 ("[I]n addition to discussing the evidence supporting his decision, the ALJ also must discuss the uncontroverted evidence he chooses not to rely upon, as well as significantly probative evidence he rejects.") *citing Vincent ex rel.*

*Vincent v. Heckler*, 739 F.3d 1393, 1394-1395 (9th Cir. 1984). *See also Haga v. Astrue*, 482 F.3d 1205, 1208 (10th Cir. 2007) ("An ALJ is not entitled to pick and choose through an uncontradicted medical opinion, taking only the parts that are favorable to a finding of nondisability."), *citing Robinson v. Barnhart*, 366 F.3d 1078, 1083 (10th Cir. 2004) and *Hamlin*, 365 F.3d at 1219; *Briggs ex rel. Briggs v. Massanari,* 248 F.3d 1235, 1239 (10th Cir. 2001) ("Although the ALJ need not discuss all of the evidence in the record, he may not ignore evidence that does not support his decision, especially when that evidence is 'significantly probative.'").

Because the ALJ failed to properly consider the evidence related to the claimant's impairments, the decision of the Commissioner must be reversed and the case remanded to the ALJ for a proper analysis of *all* the evidence in the record. If such analysis results in any changes to the claimant's RFC, the ALJ should re-determine what work the claimant can perform, if any, and ultimately whether he is disabled.

## Conclusion

In summary, the Court FINDS that correct legal standards were not applied by the ALJ, and the Commissioner's decision is therefore not supported by substantial evidence. The Commissioner's decision is accordingly REVERSED and the case REMANDED for further proceedings consistent herewith.

**DATED** this 26th day of March, 2015.

_____
**STEVEN P. SHREDER**
**UNITED STATES MAGISTRATE JUDGE**